**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4259
_____

ELIZABETH PICHARDO,

Petitioner

v.

VIRGIN ISLANDS COMMISSIONER OF LABOR;
COOL IT, INC. d/b/a AGAVE TERRACE RESTAURANT,

Respondents
_____

On Writ of Certiorari from the Supreme Court
for the Virgin Islands
(S. Ct. Civ. No. 2007-061)

Argued December 2, 2009


Before: McKEE, <u>Chief Judge</u>, FUENTES, and NYGAARD,
<u>Circuit Judges</u>


1

(Opinion Filed: July 8, 2010)

Joel H. Holt, Esq.          (Argued)
2132 Company Street
Christiansted, St. Croix
United States Virgin Islands, 00820

        Counsel for Petitioner Elizabeth Pichardo

Vincent F. Frazer, Esq.
Elliott M. Davis, Esq.
Richard S. Davis, Esq.        (Argued)
Department of Justice
34-38 Kronprindsens Gade
GERS Building, Second Floor
St. Thomas
United States Virgin Islands, 00802

        Counsel for Respondent Government of the Virgin
        Islands

_____

OPINION OF THE COURT

_____

FUENTES, Circuit Judge:

Elizabeth Pichardo was terminated from her employment

2

at Agave Terrace Restaurant in St. Thomas after violating a series of workplace rules and committing an act of insubordination. She filed a complaint with the Virgin Islands Department of Labor ("DOL") under the territory's Wrongful Discharge Act. The DOL found that Pichardo was fired for cause and denied her claim. The Superior Court of the Virgin Islands upheld the DOL's decision and rejected Pichardo's due process claims. Pichardo appealed the denial of her due process claims to the newly-created Supreme Court of the Virgin Islands, which affirmed. In this, the first case in which we have granted certiorari to review a decision of the Virgin Islands Supreme Court, we set forth our standard of review and hold that we shall defer to decisions of the Supreme Court of the Virgin Islands on matters of local law unless we find them to be manifestly erroneous. Applying this standard to Pichardo's case, we will affirm the decision of the Virgin Islands Supreme Court.

## I.

Pichardo began work as a server and cashier at Agave Terrace Restaurant on August 12, 1998. Between November 1998 and March 1999, she received four disciplinary write-ups. Pichardo was subsequently fired in April 1999. The reasons for these write-ups included: smoking around the restaurant's laundry area and leaving cigarette butts on the ground, failing to properly clean her station at the end of work, failing to report for a scheduled shift, and refusing to set tables. Following the third write-up, Pichardo was suspended for two shifts. Pichardo then received another disciplinary notice and was suspended for allegedly threatening to sue her employer. The write-up stated that she was spreading ill will and "causing more problems with

3

service throughout the restaurant." (J.A. at 125.)

During the subsequent period between this suspension and her termination, Pichardo did not return to work. She did, however, write four separate memos to Agave, each dated April 7, 1999, responding to the disciplinary write-ups. Each of these memos proffered explanations for the behavior cited in the write-ups. Agave, in its written closing statement at the DOL hearing regarding Pichardo's termination, claimed that it did not receive any of these responses until the date of the hearing. The responses were also not in Pichardo's personnel file. Agave contended that they were "conjured up" long after the incidents. (J.A. at 144.)

Pichardo was discharged on April 10, 1999 and filed a complaint with the DOL, pursuant to the Virgin Islands Wrongful Discharge Act, V.I. Code Ann. tit. 24, §§ 76-79, on April 12, 1999. The complaint asserts that the reasons Agave gave to Pichardo for her termination "were 'hearsay' that I had stated I was going to sue the restaurant, which I totally disagree with this reasons [sic]." (*Id*. at 101.) At the time of her complaint, a preliminary injunction order in a separate matter prohibited the DOL from holding hearings. It was lifted on June 30, 2000, but the Administrative Law Judge (the "ALJ") did not hold a hearing until January 14, 2002.

Both parties submitted exhibits and, though they both had the opportunity to call witnesses, Pichardo presented only her own testimony at the hearing. No transcript exists, but according to the ALJ's decision, Agave called five witnesses: four Agave employees and the restaurant's owner. All these witnesses, according to the ALJ, testified about Pichardo's poor work performance, negative attitude, threats to co-workers, and the writing of improper order tickets. They also recounted numerous warnings given to her about her behavior. Pichardo testified and, according to the ALJ, claimed that Agave's witnesses were lying. A ruling was issued nearly two years after the one-day hearing, on December 16, 2003. Pichardo had

4

written the Commissioner of Labor on October 6, 2003 complaining about this delay.

The ALJ found that Agave had met its burden and had demonstrated by a preponderance of the evidence that Pichardo was fired for cause under V.I. Code Ann. tit. 24, § 76(a). The ALJ found that the evidence satisfied § 76(a)(4), allowing discharge of an employee "who willfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer," as well as § 76(a)(9), which applies to an employee "whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him." V.I. Code Ann. tit. 24, § 76(a)(4) & (9). The Commissioner upheld the ALJ's decision.

Pichardo filed *pro se* for review before the Superior Court of the Virgin Islands on February 24, 2004.[1] *Pichardo v. Benjamin*, Civ. No. 85-2004 (V.I. Super. Ct. Mar. 30, 2007). She invoked the Superior Court's jurisdiction pursuant to V.I. Code Ann. tit. 5, § 1421, which provides for judicial review of administrative decisions. The Superior Court ordered the DOL to produce a transcript of its hearing. The DOL instead filed a Response to Order to Provide Record of Proceedings, which stated that "the tape made of the proceeding in this matter is not transcribable and therefore cannot be provided for the Court." (J.A. at 51.)[2]

_____

[1] At the time, the Superior Court was known as the Territorial Court. On September 30, 2004, the Virgin Islands Legislature passed Bill No. 25-0213 (effective October 29, 2004), changing the name of the Territorial Court of the Virgin Islands to the Superior Court of the Virgin Islands.

[2] The DOL submitted, in support of its response to the Superior Court's order, an affidavit from "the person charged with transcribing the taped record of the proceedings." (J.A. at 53.) It stated that the tapes could not be transcribed because "[t]here are simply too many incomplete questions and answers and incomplete sentences." (*Id.*) Without noting the source of its conclusion, the Superior Court stated that a transcript could not be generated "because the recording was of poor quality." (*Id.* at 34.)

5

Pichardo, represented by counsel, filed a motion on September 28, 2004 to remand her case to the DOL for a new evidentiary hearing. Agave opposed the motion, arguing both that it would be prejudiced given the passage of time and that the documentary evidence in the record was sufficient for the court to review the DOL's decision. The Superior Court did not expressly rule on the motion to remand, but it stated in a briefing order that it was "in receipt of the record of proceeding from the Department of Labor." (*Id.* at 61.) Pichardo filed a counseled brief with the Superior Court and presented three issues for review: (1) whether her due process rights were violated by the DOL's delay in rendering a decision; (2) whether her due process rights were violated by the DOL's failure to maintain the "tapes of the transcript of the proceedings" and its production of only the administrative file as the record of the proceedings; and (3) whether Agave failed to meet its burden under the Virgin Islands Wrongful Discharge Act, V.I. Code Ann. tit. 24, § 76, et. seq.

The Superior Court affirmed the DOL's decision. First, it acknowledged that "[the] case has been plagued by unexplained delays," but it determined that "a writ of review is not the proper method to address such complaints." (J.A. at 37.) Such delays, the court found, have little to do with whether Agave had cause to terminate Pichardo. Second, the court declared that it would resolve the transcript issue by assuming all objections had been timely raised, "affording Petitioner protection of claims that she may have lost due to the absence of said transcript." (*Id.*) Third, the court upheld the ALJ's determination that Agave did not violate the Wrongful Discharge Act, because it had grounds to terminate Pichardo for disobeying her employer's instructions. While the court noted that Agave presented witnesses who testified to this effect, it did not explain how it reviewed this testimony in the absence of a transcript. Its analysis focused on Pichardo's contention that the witnesses, who worked for Agave, were interested witnesses. The court concluded that it was not error for the ALJ to rely on the testimony of an interested witness and that the ALJ's credibility determination must be accepted unless "contrary to sound reason." (*Id.* at 39.) The court further noted that Pichardo had conceded that Agave "offered evidence of small

6

infractions." (*Id.*) The accumulation of these infractions, the court found, "was the basis for the termination." (*Id.* at 39-40.) Therefore, it concluded, the ALJ's decision was "supported by reasonable evidence." (*Id.* at 40.)

Pichardo appealed to the Virgin Islands Supreme Court. *Pichardo v. Benjamin*, Civ. No. 2007-061, 2008 WL 6054386 (V.I. Sup. Ct. Apr. 16, 2008). She challenged the Superior Court's refusal to consider her due process claims, but did not challenge the ruling on the merits. The Supreme Court held that it could not address Pichardo's argument that she was denied due process due to the delays before the DOL. Relying on V.I. Code Ann. tit. 24, § 70, which provides for judicial review of DOL decisions, the Supreme Court held that both it and the Superior Court were limited to considering issues raised before the Department of Labor. Section 70 provides that:

> (a) Any person aggrieved by a final order of the Commissioner granting or denying in whole or in part the relief sought may obtain a review of such order by filing in the Superior Court or the District Court, within 30 days of its issuance, a written petition praying that such decision of the Commissioner be modified or set aside.

> (b) No objection that has not been urged before the Commissioner shall be considered by the Court unless the failure or neglect to urge such objection is excused because of extraordinary circumstances. The findings of the Commissioner as to the facts, if supported by substantial evidence, shall be conclusive.

Focusing on § 70(b), the Supreme Court found that the issue of delay had not been raised as an objection before the DOL, nor was there evidence Pichardo "took any action to induce the DOL to issue its decision in the many months following the hearing." 2008 WL 6054386, at *2. The court further noted that Pichardo did not allege any "extraordinary circumstance" that prevented her from raising an objection.

The Supreme Court also rejected Pichardo's contention that her petition should be governed by V.I. Code Ann. tit. 5, §

7

1422, rather than V.I. Code Ann. tit. 24, § 70. Pichardo, in her petition before the Superior Court, had sought review pursuant to V.I. Code Ann. tit. 5, § 1421, which provides that:

> Any party to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof reviewed for errors therein as prescribed in this chapter and rules of court. Upon the review, the court may review any intermediate order involving the merits necessarily affecting the decision or determination sought to be reviewed.[3]

Section 1422 outlines the grounds for review under § 1421:

> The writ of review shall be allowed in all cases where there is no appeal or other plain, speedy, and adequate remedy, and where the officer, board, commission, authority, or tribunal in the exercise of his or its functions appears to have exercised such functions erroneously, or to have exceeded his or its jurisdiction, to the injury of some substantial right of the plaintiff.

The Supreme Court held that § 1422, which provides a general writ of review, was not applicable because V.I. Code Ann. tit. 24, § 70, a narrower provision, specifically providing for review from decisions by the DOL, applied.[4]

---

[3] The Supreme Court did not address the fact that Pichardo's petition sought a writ of review pursuant to V.I. Code Ann. tit. 5, § 1421. Moreover, although her petition invoked 5 V.I.C. § 1421, the Superior Court's order granting the writ simply stated that Pichardo's petition was brought pursuant to Territorial Court Rule 15 and V.I. Code Ann. tit. 24, § 70(a). (J.A. at 43, 47-48.)

[4] In an order dated August 19, 2008, the Supreme Court denied Pichardo's petition for rehearing. It rejected her claim that her October 6, 2003 letter to the Commissioner of Labor, in which she complained about the ALJ's delay in issuing a decision, constituted an objection under § 70(b). The court found that the letter did not "properly urge[] Pichardo's

Pichardo petitioned *pro se* for a writ of certiorari from this Court and requested the appointment of counsel. Under 48 U.S.C. § 1613, the Third Circuit has temporary certiorari jurisdiction over final decisions of the Virgin Islands Supreme Court.[5]  By order dated February 12, 2009, we granted

objections before the Commissioner of Labor, as required by [§ 70(b)]." (J.A. at 12.)  It concluded that the letter merely sought to induce the Commissioner to issue an opinion, rather than to raise a constitutional claim, and accordingly denied rehearing.

[5] The statute granting us certiorari jurisdiction provides that:

The relations between the courts established by the Constitution or laws of the United States and the courts established by local law with respect to appeals, certiorari, removal of causes, the issuance of writs of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings: *Provided*, That for the first fifteen years following the establishment of the appellate court authorized by section 1611(a) of this title, the United States Court of Appeals for the Third Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of the Virgin Islands from which a decision could be had. The Judicial Council of the Third Circuit shall submit reports to the Committee on Energy and Natural Resources of the Senate and the Committee on Natural Resources of the House of Representatives at intervals of five years following the establishment of such appellate court as to whether it has developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States from all such final decisions. The

Pichardo's petition on three specific issues:

> (1) the merits of petitioner's claims that excessive delays and the absence of a transcript of her hearing before the Virgin Islands Department of Labor ("DOL") deprived her of due process or otherwise required the Virgin Islands Superior Court to remand the matter to the DOL;

> (2) whether the Virgin Islands Supreme Court erred in not addressing petitioner's claims regarding the absence of a transcript; and

> (3) whether petitioner's claims are of the kind that, under [V.I. Code Ann. tit. 24, § 70(b)], may not be considered on a writ of review unless they have been raised in the DOL in the first instance (which might depend, *inter alia*, on whether the DOL has jurisdiction to adjudicate such claims).

(J.A. at 1.) We also granted Pichardo's motion for appointment of counsel.

## II.

This is the first time we have granted certiorari to review a decision of the newly-created Supreme Court of the Virgin Islands. We therefore take this occasion to define our standard of review in such cases.

Congress amended the Virgin Islands Revised Organic Act in 1984, establishing "the framework for a dual system of local and federal judicial review in the Virgin Islands." *Parrott v. Gov't of Virgin Islands*, 230 F.3d 615, 619 (3d Cir. 2000).[6]

---

United States Court of Appeals for the Third Circuit shall have jurisdiction to promulgate rules necessary to carry out the provisions of this section.

48 U.S.C. § 1613.

[6] We have described the Revised Organic Act as "the basic charter of government" for the Virgin Islands. *Brow v.*

This amendment vested "[t]he judicial power of the Virgin Islands" in a "'District Court of the Virgin Islands' established by Congress, and in such appellate court and lower local courts as may have been or may hereafter be established by local law." 48 U.S.C. § 1611(a). In *Parrott*, we recognized that the 1984 amendments granted the Virgin Islands Legislature the power "to divest the District Court of original jurisdiction for local matters by vesting that jurisdiction in territorial courts established by local law." *Parrott*, 230 F.3d at 619 (citing 48 U.S.C. § 1611(b)); *see also Edwards v. HOVENSA, LLC*, 497 F.3d 355, 358 (3d Cir. 2007).

The Virgin Islands legislature subsequently enacted a statute, effective October 1, 1991, granting the Superior Court of the Virgin Islands (known at the time as the Territorial Court) original jurisdiction over local civil actions. V.I. Code Ann. tit. 4, § 76(a). This provision, in combination with § 1613 of the Revised Organic Act, served to "effectively repeal any grant of concurrent jurisdiction to the District Court over local actions." *Parrot*, 230 F.3d at 620 (citing *Brow*, 994 F.2d at 1035-36); *see also Edwards*, 497 F.3d at 358-59. Under the terms of the Revised Organic Act of 1984, the District Court retained jurisdiction over appeals from the local Virgin Islands courts pending the establishment of a local appellate court. 48 U.S.C. § 1613a. These appeals were considered by an Appellate Division of the District Court. *Id.* In turn, we possessed jurisdiction over appeals from final decisions of the Virgin Islands District Court "on appeal from the courts established by local law." *Id.* § 1613a(c).

On October 29, 2004, Virgin Islands Governor Turnbull approved Act No. 6687, which established a Supreme Court of the Virgin Islands. *See Russell v. DeJongh*, 491 F.3d 130, 132 (3d Cir. 2007); 2004 V.I. Sess. Laws 179, Act No. 6687 (B. No. 25-213) (codified as amended in scattered sections of V.I. Code Ann. tit. 4). The Supreme Court of the Virgin Islands was established "as the highest court of the Virgin Islands" and granted "the supreme judicial power of the Territory." V.I. Code Ann. tit. 4, § 21. However, under the terms of the Revised

*Farrelly*, 994 F.2d 1027, 1035 n.6 (3d Cir. 1993).

11

Organic Act, for the first fifteen years after the establishment of the Virgin Islands Supreme Court, we "shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of the Virgin Islands from which a decision could be had." 48 U.S.C. § 1613. Section 1613 also requires our Court to submit reports to Congress regarding whether the Supreme Court of the Virgin Islands has "developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States from all such final decisions." *Id.*

It is in light of this historic and statutory backdrop that we must consider the nature of our review of the Supreme Court of the Virgin Islands' decisions. At the outset, we identify three possible standards of review that we might apply to a decision of the Virgin Islands Supreme Court. First, we might define our role as that of a "super-Supreme Court," with powers of review equivalent to that of a state Supreme Court reviewing the decision of an intermediary state appellate court. Second, our role might be framed as equivalent to that of the United States Supreme Court when it reviews decisions of a state Supreme Court. *See, e.g.*, *Oregon v. Guzek*, 546 U.S. 517, 521 (2006) (holding that Supreme Court "possess[es] jurisdiction to review state-court determinations that rest upon federal law"); *Richfield Oil Corp. v. State Bd. of Equalization*, 329 U.S. 69, 84 (1946) (declaring that the California Supreme Court's construction of state law is binding upon the United States Supreme Court). Third, our review might demand substantial deference on matters of local law. Under this third potential standard, which the Ninth Circuit embraced in reviewing decisions by the Supreme Court of Guam, "we may reverse the Supreme Court only if it commits manifest error or is inescapably wrong." *Haeuser v. Dep't of Law*, 368 F.3d 1091, 1093 (9th Cir. 2004).

Upon consideration of the purpose of Congress' grant to us of certiorari jurisdiction over the Virgin Islands Supreme Court, as well as the treatment of similar statutes by the Supreme Court and other circuit courts, we hold that this third option – substantial deference – is the proper standard for our review of decisions by the Supreme Court of the Virgin Islands. It is, subject to our review for manifest error, the role of the Virgin Islands Supreme Court to say what the law of the territory is. We will reverse a decision of the Supreme Court of

12

the Virgin Islands that is based upon territorial law only if it is inescapably wrong.

The standard we adopt today has previously been urged upon this Court in relation to our review of decisions by the Appellate Division of the District Court of the Virgin Islands, which previously heard appeals from the Territorial Court. In *BA Properties v. Government of the United States Virgin Islands*, 299 F.3d 207 (3d Cir. 2002), we rejected the "manifest error" standard and the proposition that the Appellate Division should be treated "as if it were a local appellate or supreme court." *Id.* at 211-12; *see also Saludes v. Ramos*, 744 F.2d 992, 993-94 (3d Cir. 1984) (rejecting deferential standard of review for Appellate Division decision). In reaching this conclusion, we emphasized that the District Court of the Virgin Islands "is essentially a federal creature, and not an insular appellate court." *BA Properties*, 299 F.3d at 212.

We also indicated in *BA Properties* that the Virgin Islands Supreme Court, once it was established by the Virgin Islands Legislature, would possess an authoritative voice on matters of Virgin Islands law. *Id.* (recognizing that Virgin Islands Supreme Court "would essentially have the final word on the interpretation of local Virgin Islands law"). We reinforced this position in a subsequent case decided after the establishment of the Virgin Islands Supreme Court. In *Edwards*, in which we reviewed a decision of the District Court of the Virgin Islands that relied on Virgin Islands law, we declared that "[g]oing forward, now that the Virgin Islands has established an insular appellate court and will begin developing indigenous jurisprudence, the District Court, when exercising jurisdiction over cases requiring the application of Virgin Islands law, will be required to predict how the Supreme Court of the Virgin Islands would decide an issue of territorial law." 497 F.3d at 362 n.3. These prior decisions do not, however, compel the conclusion that the Virgin Islands Supreme Court, during the period in which we possess certiorari jurisdiction, is not at all subject to our review on matters of local law. Instead, we find that a highly deferential standard of review is proper in light of Supreme Court precedent and the nature of our own statutory grant of certiorari jurisdiction.

13

In *Waialua Agricultural Co. v. Christian*, 305 U.S. 91 (1938), the Supreme Court analyzed, in the context of then-territorial Hawaii, the proper standard of review for a federal court of appeals when considering a territorial court's decision regarding local substantive law. The Supreme Court granted certiorari and cross-certiorari to review the Ninth Circuit's reversal of conclusions of law reached by the Supreme Court of Hawaii. *Id.* at 93-94. The statute governing the Ninth Circuit's relationship to the Supreme Court of Hawaii at the time was not identical to the provision governing our relationship to the Virgin Islands Supreme Court.[7] Nonetheless, we find the principles and policy considerations underpinning the standard of review articulated by the Supreme Court in *Waialua Agricultural* relevant to our analysis.

The Court in *Waialua Agricultural* declared that "the arguments of policy in favor of having the state courts declare the law of the state are applicable to the question of whether or not territorial courts should declare the law of the territories with the least possible interference. *It is true that under the appeal statute the lower court had complete power to reverse any ruling of the territorial court on law or fact but we are of the opinion that this power should be exercised only in cases of manifest error.*" *Id.* at 109 (footnote omitted and emphasis

_____

[7] Section 128 of the Judicial Code, as amended in 1925, granted the Ninth Circuit jurisdiction to review decisions of the Supreme Court of Hawaii. It provided:

> The circuit courts of appeal shall have appellate jurisdiction to review by appeal or writ of error final decisions . . . . In the Supreme Courts of the Territory of Hawaii and of Porto Rico, in all civil cases, civil or criminal, wherein the Constitution or a statute or treaty of the United States or any authority exercised thereunder is involved; in all other civil cases wherein the value in controversy, exclusive of interest and costs, exceeds $5,000, and in all habeas corpus proceedings.

68 Cong. Ch. 229, 43 Stat. 936, 936 (Feb. 13, 1925).

added). While the applicable law granted broad powers to the Ninth Circuit, the Supreme Court found that substantial deference should be applied to this review. The Court held that absent a "clear departure from ordinary legal principles, the preference of a federal court as to the correct rule of general or local law should not be imposed upon Hawaii." *Id.*

In *De Castro v. Board of Commissioners*, 322 U.S. 451 (1949), a case involving the First Circuit's review of a decision of the Supreme Court of Puerto Rico, the Supreme Court articulated a similarly deferential standard of review: "to justify reversal by the federal courts of a decision of an insular supreme court in a matter of local concern, the error must be clear or manifest; the interpretation must be inescapably wrong." *Id.* at 458 (quotation marks and citation omitted); *see also Philippine Sugar Estates Dev. Co. v. Gov't of Philippine Islands*, 247 U.S. 385, 390 (1918) ("This court is always disposed to accept the construction which the highest court of a territory or possession has placed upon a local statute. But that disposition may not be yielded to, where the lower court has clearly erred.") (citation omitted). In *De Castro*, the Court revealed the policy concerns that shaped this standard of review, including the desire to "leave appropriate scope for the development by those courts of a system of law which differing from our own in its origins and principles, would nevertheless be suitable to local customs and needs." 322 U.S. at 454-55.

The differences between 12 U.S.C. § 1613, which grants us certiorari jurisdiction over the Virgin Islands Supreme Court, and 28 U.S.C. § 1257, which grants the United States Supreme Court certiorari jurisdiction over the highest State courts, lend further support for this distinct standard of review. Section 1257(a) provides that:

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of

the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

Under § 1257, the Supreme Court may review a decision of a highest state court when the United States Constitution or a federal law is implicated. The Court declines to review state court decisions that rely upon an "adequate and independent" state-law ground. *Michigan v. Long*, 463 U.S. 1032, 1041 (1983). Our statutory grant of authority places no similar limitation upon our jurisdiction by writ of certiorari. It states that, for the first fifteen years of the Supreme Court of the Virgin Island's existence, this Court "shall have jurisdiction to review by writ of certiorari *all* final decisions of the highest court of the Virgin Islands from which a decision could be had." 48 U.S.C. § 1613 (emphasis added). Our review is not limited to cases that implicate the United States Constitution or federal law. *See EIE Guam Corp. v. Supreme Court of Guam*, 191 F.3d 1123, 1125 (9th Cir. 1999) (declaring that Ninth Circuit, in reviewing decisions by the Supreme Court of Guam under a statute virtually identical to 48 U.S.C. § 1613, "has authority to review not only federal issues, but also all issues of local law").

Accordingly, while the Virgin Islands Supreme Court "essentially [has] the final word on the interpretation of local Virgin Islands law," *BA Properties, Inc.*, 299 F.3d at 212, it remains subject to the deferential standard of review we establish today. Such a standard, which also provides that we will not be deprived of jurisdiction in cases in which the decision relies upon "adequate and independent" territorial-law grounds, best ensures that this Court can perform the role given to us by Congress, to nurture the development of "sufficient institutional traditions to justify direct review by the Supreme Court of the United States." 48 U.S.C. § 1613.[8]

_____

[8] Local Appellate Rule 112.1 outlines the "character of reasons" that guide our decision of whether or not to grant a writ of certiorari. These considerations include that "[t]he Supreme Court of the Virgin Islands has decided an important question of

16

The standard of review we embrace today also accords with that applied by the Ninth Circuit Court of Appeals during the recent period in which it exercised certiorari review over the Supreme Court of Guam. The statute providing for this review, for the first fifteen years following establishment of the Supreme Court of Guam, was nearly identical to the statute granting us jurisdiction to review decisions by the Supreme Court of the Virgin Islands.[9]  *See* 48 U.S.C. § 1424-

federal or territorial law that has not been, but should be, decided by this court." Local Appellate Rule 112.1(a)(3). This rule accords with our holding that, although we pay substantial deference to the Virgin Islands Supreme Court's decision on matters of territorial law, we retain authority to review those decision for manifest error.

[9] The current statute provides that:

> The relations between the courts established by the Constitution or laws of the United States and the local courts of Guam with respect to appeals, certiorari, removal of causes, the issuance of writs of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings.

48 U.S.C. § 1424-2. A 2004 amendment removed the language providing for certiorari review by the Ninth Circuit. The omitted portion had read:

> *Provided*, That for the first fifteen years following the establishment of the appellate court authorized by section 1424-1(a) of this title, the United States Court of Appeals for the Ninth Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of Guam from which a decision could be had. The Judicial

17

2 (2000). In exercising its discretionary review under § 1424-2, the Ninth Circuit sought to "balance the temporary power of oversight that Congress has given us with Congress's clear intent to allow Guam to develop its own, independent institutions." *Gutierrez v. Pangelinan*, 276 F.3d 539, 546 (9th Cir. 2002) (quotation marks and citation omitted). The Ninth Circuit therefore reviewed decisions of the Guam Supreme Court that involved local law – whether interpreting statutes enacted by the Guam Legislature or developing Guam's common law – by applying a "deferential standard of review." *Id.* Under this standard the Ninth Circuit would affirm a decision interpreting a Guam statute "'where . . . the Guam Supreme Court appears to have construed [the] statute reasonably and fairly.'" *Id.* (quoting *EIE Guam Corp.*, 191 F.3d at 1127); *see also Guam v. Guerrero*, 290 F.3d 1210, 1213 (9th Cir. 2002) ("We recognize that on matters of local concern, appellate courts apply a highly deferential standard of review [to a decision of a territorial supreme court].") (citing, *inter alia*, *De Castro*, 322 U.S. at 454).

In *Haeuser v. Department of Law*, the Ninth Circuit discussed the change in its standard of review for decisions by the Guam Supreme Court from its prior standard for review of the Appellate Division of the District Court of Guam, which had heard appeals from the territorial trial court. 368 F.3d at 1097-

---

Council of the Ninth Circuit shall submit reports to the Committee on Energy and Natural Resources of the Senate and the Committee on Natural Resources of the House of Representatives at intervals of five years following the establishment of such appellate court as to whether it has developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States from all such final decisions. The United States Court of Appeals for the Ninth Circuit shall have jurisdiction to promulgate rules necessary to carry out the provisions of this subsection.

Pub. L. No. 108-378, § 2.

98. It concluded that its prior rationale for not deferring to the Appellate Division no longer applied when reviewing the Guam Supreme Court, citing its own prior decisions in *Gutierrez* and *EIE Guam Corp. Id.* at 1098. Examining the terms of the statute establishing its certiorari review over the Guam Supreme Court, the court reasoned that "[a]lthough Congress did not explicitly state that greater deference must be paid to the Guam Supreme Court, the text of § 1424-2 assumes that the Guam Supreme Court will have the freedom to develop its own 'traditions,' which in turn, undoubtedly entails the creation of legal precedent as well." *Id.* at 1099. Congress expressed the same intention in the statute governing our review of the Virgin Islands Supreme Court, which requires us to report to Congress regarding whether the new court "has developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States." 48 U.S.C. § 1613. The development of such traditions requires some degree of independence and demands that our oversight be marked by considerable deference. *See Haeuser*, 368 F.3d at 1099 ("Unlike our review of the Appellate Division, our review of the Guam Supreme Court requires us to defer to an insular judicial system's expertise in local matters as well as to honor Congress' assumption that the Supreme Court would have the freedom to develop sufficient legal traditions and precedent."). As the Ninth Circuit concluded, and we hold today, the degree of deference we must afford to a territorial supreme court allows for reversal on matters of local law only when "clear or manifest error is shown." *Id.*

### III.

We now apply this standard of review to the three issues upon which we granted Pichardo's petition for writ of review. We begin with the third issue we identified in the grant of review: whether, under V.I. Code Ann. tit. 24, § 70(b), Pichardo's due process claims may only be considered by the Virgin Islands court, on a writ of review, if they have first been raised before the Department of Labor.

The Supreme Court of the Virgin Islands held that the Superior Court "correctly declined to address Pichardo's due process arguments on a writ of review." *Pichardo*, 2008 WL

6054386, at *1. The Superior Court had affirmed the DOL's determination that Pichardo was not wrongfully terminated. It also held that it could not rule on Pichardo's due process claim, as such a claim was beyond the scope of the writ of review it had granted, which focused on whether Pichardo was terminated for cause. (J.A. at 37 [*Pichardo v. Benjamin*, Civ. No. 85-2004 (V.I. Sup. Ct. Mar. 30, 2007)]). The Virgin Islands Supreme Court exercised plenary review over the Superior Court's ruling on Pichardo's due process claim. 2008 WL 6054386, at *2.

After reviewing the record before it, the Supreme Court concluded that Pichardo failed to raise any objection to the DOL's delay in conducting a hearing before the Commissioner of Labor, nor did she take any action to induce the DOL to issue a decision after the hearing occurred. *Id.* Since V.I. Code Ann. tit. 24, § 70(b) only permits the Superior Court to consider issues upon which an objection has been "urged before the Commissioner," the Supreme Court concluded that the Superior Court lacked jurisdiction to hear Pichardo's due process claim.[10]

_____

[10] Pichardo filed a petition for rehearing, which the Virgin Islands Supreme Court denied. (J.A. at 10-13 (Order denying Petition for Rehearing (Aug. 19, 2008).) Pichardo contended in her petition that an October 6, 2003 letter she sent to the Commissioner of Labor, expressing her discontent with the Administrative Law Judge's delay in issuing a decision in her case, represented an objection sufficient to allow for review of this issue. In denying rehearing, the Supreme Court noted that the letter was not included in the Joint Appendix filed with Pichardo's appellate brief nor was it referenced in her brief. (J.A. at 11-12.) Even absent these deficiencies, the Supreme Court declared that it was not persuaded that the letter had properly raised Pichardo's objections before the Commissioner of Labor. It found the letter merely expressed that she was denied her rights "under the VI Rules and Regulations as promulgated on March 18, 1981," but did not assert that any constitutional rights had been violated. (*Id.* at 12.) We have independently reviewed the letter and agree that it raises no objections that could be interpreted as an allegation of a due process violation under the Constitution. (*See Id.* at 131.) We find no basis for concluding that the Supreme Court manifestly

Accordingly, it found that it need not even reach the issue of whether a due process claim could be raised pursuant to a writ under V.I. Code Ann. tit. 24, § 70.

The Supreme Court also addressed a separate, but related, issue raised by Pichardo: whether her petition for review of the DOL's decision should be governed by V.I. Code Ann. tit. 5, § 1422, rather than V.I. Code Ann. tit. 24, § 70. Section 1422 does not limit review to issues for which an objection was raised before the entity whose decision is under review. The Supreme Court found that § 1422 – which provides for review "in all cases where there is no appeal or other plain, speedy, and adequate remedy" – is a general review statute and "is only applicable in the absence of another remedy." 2008 WL 6054386, at *2. Since § 70 expressly provides for review of decisions by the DOL, the Supreme Court found § 1422 inapplicable. Given the deferential standard that we have declared governs our review of the Supreme Court's decision in this, a matter of Virgin Islands law, we find no manifest error in the Supreme Court's two decisions, that the writ of review under § 70 is limited to consideration of issues for which an objection was raised and that § 1422 cannot be invoked to seek review of decisions by the DOL, given the existence of § 70.[11]

erred in its determination that the letter did not constitute a proper objection under V.I. Code Ann. tit. 24, § 70.

[11] Since, pursuant to 48 U.S.C. § 1613, we are entrusted with the task of overseeing the development of the Virgin Islands Supreme Court's "institutional traditions," we take this opportunity to comment on a seeming discrepancy in Virgin Islands jurisprudence, which the Supreme Court did not discuss in its decision. Virgin Islands courts have not treated the issue of whether § 70 applies to review of DOL decisions consistently. In *Bachelor v. Pitt-Des-Moines, Inc.*, Civ. No. 262/1998, 2003 WL 553266 (Terr. V.I. Feb. 3, 2003), the Territorial Court of the Virgin Islands reviewed the DOL's ruling in a Wrongful Discharge Act case pursuant to a writ of review under V.I. Code Ann. tit. 5, §§ 1421-1423, without any reference to § 70. However, a separate Territorial Court decision, issued prior to *Bachelor*, embraced the position that

21

Moreover, although Pichardo raised due process claims under the United States Constitution, this does not alter our conclusion. Although the Virgin Island Supreme Court's decision denied Pichardo the opportunity to have her due process claim considered in this matter, a writ of review pursuant to V.I. Code Ann. tit. 24, § 70 was not the only available avenue for Pichardo to vindicate any due process right related to the DOL's delay. Pichardo could have brought an action for an injunction or a writ of mandamus to compel the agency to hold a hearing or issue a decision. She could have filed an action pursuant to 42 U.S.C. § 1983, challenging the alleged denial of her due process rights. Pichardo also could have brought a claim in the Superior Court, pursuant to V.I. Code Ann. tit. 24, § 79, concurrently with her action before the DOL. Section 79 provides that "any wrongfully discharged employee may bring an action for compensatory and punitive damages in any court of competent jurisdiction against any employer who has violated the provisions of [the Virgin Islands Wrongful Discharge Act]." Accordingly, we conclude that the constitutional nature of Pichardo's claim does not give us cause to alter our analysis where, as here, the Virgin Island Supreme Court's determination did not deny her the "opportunity to protect" her due process rights and other judicial remedies remained available. *See Brinkerhoff-Faris Trust & Sav. Co. v. Hill*, 281 U.S. 673, 682 (1930) ("[W]hile it is for the state courts to determine the adjective as well as the substantive law of the state, they must, in so doing, accord the parties due process of law.").[12]

_____

the Supreme Court of the Virgin Islands has now declared proper: that judicial review from a decision of the DOL is only available pursuant to § 70. In *Peters v. Channel 8 (WSVI)*, Civ. No. 1111/1992, 1994 WL 326548 (Terr. V.I. May 19, 1994), the court considered Peters's argument that it erroneously relied upon § 70. Invoking the principle that a more specific statute governs, rather than a more general one dealing with the same subject, the court declared that § 70 and not § 1421 governed its jurisdiction.

[12] These alternative means of raising her due process claims also compel us to reject Pichardo's contention that the

22

The first and second issues upon which we granted the writ of certiorari can easily be disposed of. As for the first issue, given our discussion above, we need not reach the merits of Petitioner's claim that she was denied due process by virtue of the delays before the DOL. As for the second issue, Pichardo failed to raise a claim regarding the lack of a transcript in her brief before the Supreme Court, a point she concedes in her brief before our Court. (Appellant's Br. at 37.) Accordingly, we find no basis for concluding that the Supreme Court committed any error in failing to address her claims related to the Superior Court's review of the DOL's determination in the absence of a transcript.

Although this issue was waived and we therefore will not speak to the merits of Pichardo's due process claim on the transcript issue, in our role of overseeing the development of the Virgin Islands' "institutional traditions" we will take this opportunity to briefly emphasize the importance of a transcript in ensuring proper review of an administrative hearing. We have recognized, in other contexts, the importance of having an adequate record available in order to provide meaningful judicial review of an agency action. *See Marincas v. Lewis*, 92 F.3d 195, 202 (3d Cir. 1996) (review of asylum application); *see also Kheireddine v. Gonzales*, 427 F.3d 80, 84 (1st Cir. 2005) (describing how, in immigration proceeding, "due process demands a reasonably accurate, reasonably complete transcript, or an adequate substitute, to allow for meaningful and adequate appellate review") (quotation marks and citation omitted). The Supreme Court, in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), noted that "the lack of recordings or transcripts" of an immigration proceeding left the INS'

writ pursuant to V.I. Code Ann. tit. 5, § 1421-23 is applicable here given that § 1422 provides that "[t]he writ of review shall be allowed in all cases where there is no appeal or other plain, speedy, and adequate remedy." V.I. Code Ann. tit. 5, § 1422. Although we defer to the Virgin Islands Supreme Court's holding that V.I. Code Ann. tit. 5, § 1421 does not apply to DOL proceedings, to the extent that Pichardo claims that V.I. Code Ann. tit. 5, § 1421 must be applied in order to vindicate her constitutional claims, we find this contention unavailing.

23

administrative appeals unit with "no complete or meaningful basis upon which to review application determinations." *Id.* at 496.

We find the Superior Court's opinion problematic because, in reviewing the record for substantial evidence to support the ALJ's decision, it relied in part on the statements of witnesses at the hearing, which it could not review absent the transcript. It notes that the ALJ found Agave had grounds to terminate Pichardo, noting "[r]espondent put forth six witnesses whose testimony covered topics that included that Petitioner was late 3 or 4 times a week, did not properly fill out tickets which were given to the cook to prepare the food, failed to follow the standards, and did not listen to manager's orders." (J.A. at 38.) There is no citation to the source of this summary, but in the absence of a transcript it can be assumed that it came from the ALJ's opinion. Throughout the Superior Court's opinion, the court merely states the ALJ's findings and conclusions without comparing these to an independent assessment of the record. The only additional items in the record that the Superior Court can be assumed to have reviewed, and which were also presented to this Court, are the various employee write-ups from Agave regarding Pichardo, Pichardo's responses, a decision relating to her Unemployment Insurance claim, statements regarding her Unemployment Insurance payments, Agave's Cashier Rules, the restaurant's Standards of Conduct and Orientation Checklist, and a credit card receipt on which no tip was left. Many of these items were authenticated and admitted through the testimony of witnesses at the hearing, as noted in the ALJ's opinion. The ALJ's decision substantially relied upon the statements of these witnesses. (*See* J.A. at 94-97.) The decision noted that "[c]omplainant brought fourth [sic] no witnesses except herself and did not prove her testimony that all of Respondent's witnesses were lying." (*Id.* at 96.) Accordingly, the ALJ found "sufficient evidence in the sworn testimony of the witnesses to support Respondent's decision not to continue Complainant's employment for disobeying reasonable Orders, not performing certain tasks and inability to work with other employees." (*Id.* at 97.) Absent the ability to review that testimony directly, by reading the transcript, the Superior Court lacked a sufficient record to properly review the ALJ's decision.

24

We emphasize these deficiencies in order to raise the attention of the Virgin Islands judiciary to the importance of a transcript to facilitate a proper review of an administrative agency's decision.

## IV.

For the foregoing reasons, we will affirm the Supreme Court of the Virgin Islands' decision.